# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **J.D.H.**[1], ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. CIV-25-667-SM** |
| ) | |
| **FRANK BISIGNANO,** ) | |
| **Commissioner of Social** ) | |
| **Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff J.D.H., brings this action for judicial review of the Commissioner of Social Security's final decision that he was not "disabled" under the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(c). Docs. 8 & 9.[2]

Plaintiff asks this Court to reverse the Commissioner's decision and remand the case for further proceedings, arguing the Administrative Law

---

[1]    The Court refers to Plaintiff by initials only to protect Plaintiff's privacy because of the sensitive nature of medical and personal information disclosed in Social Security cases.

[2]    Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the Administrative Record (AR) will refer to its original pagination.

Judge (ALJ) erred in his consistency evaluation, "'cherry-picked' the mental CE's evaluation," failed to perform a function-by-function evaluation of his mental limitations, and incorrectly evaluated the state agency physician's reconsideration opinion. Doc. 10, at 13-31.

After careful review of the record, the parties' briefs, and the relevant authority, the Court reverses the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## I.    Administrative determination

### A.    Disability standard.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

**B.    Burden of proof.**

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that he can no longer engage in his prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such job exists in the national economy. *Id.*

**C.    Relevant findings.**

**1.    The ALJ's findings.**

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 20-29; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found that Plaintiff:

(1)    had not engaged in substantial gainful activity since June 20, 2021, the alleged onset date;

(2)    has the following severe impairments: COPD, anxiety disorder, major depressive disorder, post-traumatic stress disorder aka PTSD, bipolar disorder, mild cardiomyopathy, hernia, degenerative disc disease, and nicotine dependence;

(3)    has no impairment or combination of impairments that meet or medically equal the severity of a listed impairment;

(4)    has the residual functional capacity[3] (RFC) to perform light work—meaning he can lift, carry, push, or pull twenty pounds occasionally and ten pounds frequently; he can sit for six hours during an eight-hour workday; he can stand or walk for six hours in an eight-hour workday—but with the following limitations: he can only occasionally climb stairs and ramps and is limited to occasional stooping, kneeling, crouching, or crawling; he must avoid unprotected heights and dangerous machinery; he is limited to frequent handling and fingering bilaterally and occasional reaching overhead; he is able to understand, remember, and apply simple instructions, make simple work related decisions and concentrate and persist for extended periods in order to complete simple work tasks with routine supervision; he is able to interact with and respond appropriately to others in a routine work setting on an occasional basis, incidental to the work being performed however, he would need to avoid work related interaction with the general public; he is able to adapt to a routine work setting where changes are infrequent, well explained and introduced gradually and must avoid concentrated concentration to dust, fumes, extreme temperatures, and other pulmonary irritants;

(5)    has no past relevant work; and that

(6)    there are jobs that exist in significant numbers in the national economy that Plaintiff is able to perform such as Routing Clerk, Dictionary of Occupational Titles (DICOT) Code 222.687-022; Collator operator, DICOT Code 208.685-010; and Marker, DICOT Code 209.587-034; and so,

(7)    Plaintiff was not under a disability from June 2021 through September 27, 2024.

---

[3]    Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

AR 20-26.

## 2. Appeals Council's findings.

The Social Security Administration's Appeals Council denied Plaintiff's request for review, *id.* at 1-6, making the ALJ's decision "the Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's decision.

### A. Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). "An agency decision that either applies an incorrect legal standard or is unsupported by substantial evidence is subject to reversal." *Staheli v. Comm'r, SSA*, 84 F.4th 901, 905 (10th Cir. 2023).

"'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (quoting *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010)); *see also Wall*, 561 F.3d at 1052 (explaining that "'[e]vidence is not substantial if it is overwhelmed by other evidence in the record'" (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62

(10th Cir. 2005))); *Lax*, 489 F.3d at 1084 (defining substantial evidence as "more than a scintilla, but less than a preponderance").

This Court "'consider[s] whether the ALJ followed the 'specific rules of law that must be followed in weighing particular types of evidence in disability cases,' but [] will not reweigh the evidence or substitute [its] judgment for the Commissioner's.'" *Id.* (citation modified) (quoting *Hackett v. Barnhart,* 395 F.3d 1168, 1172 (10th Cir. 2005)). Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski v. F.A.A.,* 372 F.3d 1195, 1200 (10th Cir. 2004)).

"[T]he failure to apply proper legal standards may, under the appropriate circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). But the failure to apply the proper legal standard requires reversal only where the error was harmful. *Cf. Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (placing the burden to show harmful error on the party challenging an agency's determination).

## III.  The ALJ did not perform a proper consistency evaluation.

Plaintiff argues the ALJ gave short-shrift to his testimony, minimized his statements about his mental health limitations, and gave a boilerplate consistency conclusion. Doc. 10, at 16-18. The undersigned agrees.

### A.  The evaluative process.

The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities.

SSR 16-3p, 2017 WL 5180304, at *3.

Tenth Circuit precedent follows the Commissioner's regulations but characterizes the evaluation as a three-part test. *See, e.g.*, *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)). As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. § 404.1529(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes

or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures a claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* SSR16-3p, 2017 WL 5180304, at *7-8. The Court defers to an ALJ's symptom evaluation unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation marks omitted). The ALJ need not perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* SSR 16-3p, 2017 WL 5180304, at *10.

## B. The ALJ's analysis of Plaintiff's consistency and subjective statements was legally deficient and requires remand.

The ALJ summarized Plaintiff's testimony:

The claimant testified he experiences heart problems with chest pain and shortness of breath. (Testimony). He testified he uses a nebulizer. He testified he has trouble with raising his arms. He testified he hears voices. He smokes two packs per day. He has a medical marijuana card and eats edibles. *He testified that no healthcare provider has told him to stop taking marijuana despite his allegations, at times, of hearing voices.*

AR 23 (emphasis added).

> After this summary, the ALJ reached this boilerplate conclusion:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

*Id.* An ALJ must not rely exclusively on conclusory or boilerplate language to support credibility findings but must cite "specific reasons" for such findings. *Hardman v. Barnhart*, 362 F.3d 676, 678-79 (10th Cir. 2004).

Plaintiff's fifteen pages of testimony covered his physical and mental-health conditions. Focusing on Plaintiff's mental-health condition testimony, when the ALJ asked Plaintiff what his manic state was like Plaintiff replied:

> It's pure hell. It's my mind constantly racing. . . .

AR 45. Plaintiff testified he is in this state one to two times a week, lasting several days. *Id.* at 46. The ALJ asked Plaintiff about hearing voices. Plaintiff replied that the voices had told him to hurt himself and to hang himself. *Id.* Plaintiff testified he has suicidal thoughts "almost constantly." *Id.* Plaintiff often speaks to the voices and gets borderline insomnia. *Id.* at 47. He lacks motivation, has mood swings, has trouble getting along with others, and has about four panic attacks a month. *Id.* at 47-48. He also testified he has trouble

with his coworkers and supervisors, he is "not very good at concentrating," his memory is "not very good," he does not like to go inside stores, and that change and stress are very difficult for him. *Id.* at 48. He never leaves the house without his wife and he stays in the car when they go shopping. *Id.* at 50. As to medical marijuana, Plaintiff testified he takes edibles to assuage his severe headaches and backpain. *Id.* at 51.

Respondent argues that the ALJ made sufficient findings about Plaintiff's testimony – he reiterated the marijuana use, despite Plaintiff's allegation that he "at times" heard voices. Doc. 11, at 6 (citing AR 23, 51). But Plaintiff's testimony was that he had a medical marijuana card and used edibles to reduce his headaches and backpain and that no medical providers told him not to use marijuana. AR 51.

Here, not only did the ALJ rely on boilerplate language, but he also failed to contrast Plaintiff's subjective statements about the intensity, persistence and limiting effects of his mental health conditions. The ALJ did not refer to Plaintiff's near constant suicidal thoughts, to his mood swings, his panic attacks, or much else of Plaintiff's mental health symptoms beyond the ALJ's incomplete summary about Plaintiff hearing voices.

Respondent also notes that later the ALJ discussed Plaintiff's diagnosis of the severe impairments he found (anxiety, depression, PTSD, and bipolar disorder). Doc. 11, at 6 (citing AR 30). And the Respondent argues the ALJ considered Plaintiff's function reports and the medical examination findings, which Respondent concedes were exams focused on largely physical complaints. *Id.* at 7.

In considering Plaintiff's mental impairments and the Paragraph B criteria, the ALJ relied on three function reports from 2022 and 2023. *Id.* at 22 (citing *id.* at 568-78, 618-25, 667-74). These function reports have some questions related to mental-health limitations (*e.g.*, "Q: How well do you handle stress? A: Not well. Q: How well do you handle changes in routine? A: Not well." AR 574, 624, 673. "Q: Have you noticed any unusual behavior or fears? If 'YES' please explain. A: I don't sleep good cause I fear my heart will stop." "Fear of not waking up." AR 574, 624). The questions largely focus on how illnesses or conditions impact the claimant's daily activities and asks for information about the claimant's abilities. *Id.* at 568-75; 619-24; 668-73.

The ALJ summarized Plaintiff's mental health diagnoses:

> The claimant has been diagnosed with anxiety disorder; major depressive disorder; post-traumatic stress disorder aka PTSD; and bipolar disorder. (13F1-7). However, he has been noted on exam as presenting with a pleasant mood, as well groomed, and appearing appropriately dressed. (1F5; 3F7). The claimant was examined by

Doctor Coats. (13F). He was noted with a distraught mood. He reported taking Prozac and Remeron prescribed by Grand Lake Mental Health in Ponca City. He reported two psychiatric hospitalizations, once for an arrest after cutting his wrist the most recent was at supply in 2012 after he told his mental health care provider, he was going to hang himself. He reported that since then, he has had no suicidal ideations. His memory was noted as intact, with successful testing performance. (13F2). Taken together, his symptoms, including at times, intact function on exams reasonably supports finding him limited to the above mental limitations.

*Id.* at 24.

As to the state agency physicians' opinions, with only the mental health assessments included:

They opined that the claimant was limited to a medium level with additional mental limitations. . . . The assessment that he would require mental limitations is persuasive also by cited mental symptomology and is consistent with his record of treatment and activities of daily life.

The undersigned finds the assessment of Doctor Miller persuasive. (13F). He opined that the claimant was limited in his mental activities, such as simple routine instructions, and social and adaptation limits. This is supported by diagnosis from acceptable medical sources of PTSD, bipolar disorder, depressive disorder and anxiety disorder and symptomatology requiring hospitalization in the past.

*Id.* at 25.

Given Plaintiff's subjective descriptions of his functional limitations, the ALJ did not explain why or how he elected to accept Dr. Miller's opinions, such as simple routine instructions and social and adaptation limitations. He

summarized Plaintiff's medical visits, although he did not directly cite any of the thirteen months of treatment records from Grand Lake Mental Health Clinic. At bottom, it appears the ALJ merely recited evidence, without comment or adequate explanation for how that evidence was consistent or inconsistent with Plaintiff's subjective claims of mental impairment. As noted, the ALJ never mentioned Plaintiff's reported mood swings, panic attacks, suicidal thoughts, and inability to leave the house alone. This constitutes reversible error. "Because the ALJ did not . . . sufficiently articulate his reasoning, we cannot conduct a meaningful review of the pain assessment." *Brownrigg v. Berryhill*, 688 F. App'x 542, 546 (10th Cir. 2017) (reversing and remanding for further explanation of reasons where ALJ examined some objective medical evidence, but failed to address other factors relevant to pain analysis); see also *Murray v. Berryhill*, No. CIV-15-364-CG, 2017 WL 4010868, at *4 (W.D. Okla. Sept. 12, 2017) (remanding where Plaintiff reported his mental impairments severely limited his ability to engage in activities outside of his home, noting that "[a]lhough the ALJ recounted Plaintiff's testimony and report of his daily activities, she did not provide analysis or explanation as to how those activities lessened Plaintiff's credibility either generally or specifically regarding his testimony that his depression was isolating").

The ALJ's consistency analysis was legally flawed and not supported by substantial evidence. *See Hardman*, 362 F.3d at 679 (explaining that ALJ must "explain why the specific evidence relevant to each [credibility] factor led him to conclude claimant's subjective complaints were not credible," or remand is required). Because the ALJ erred in his consistency assessment in relation to the RFC, the ALJ's RFC findings and step five findings are also necessarily flawed and the Court will not address any other arguments. *See Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) ("Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined.").

## IV.    Conclusion.

Based on the above, the Court reverses and remands the Commissioner's decision for further proceedings.

**ENTERED** this 12th day of December 2025.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE